**UNITED STATES of America, Plaintiff–Appellee,**

v.

**PEPPERTREE APARTMENTS, City Court II Apartments, et al., Defendants,**

**George Bailes, Jr., Defendant–Appellant.**

**No. 89–7850.**

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1991.

---

Roy M. West, Birmingham, Ala., for defendant-appellant.

Frank W. Donaldson, U.S. Atty., Robert P. Barclift, Asst. U.S. Atty., Birmingham, Ala., Geoffrey L. Patton, U.S. Dept. of Housing and Urban Development, Office of Gen. Counsel, Washington, D.C., for plaintiff-appellee.

Before BIRCH, Circuit Judge, DYER, Senior Circuit Judge and MOYE *, Senior District Judge.

BIRCH, Circuit Judge:

Appellants George Bailes, Jr. ("Bailes"), Bailes Realty Company, Peppertree Apartments, City Court II, Rainbow Apartments Company, and College Manor Ltd. appeal from an order of the United States District Court for the Northern District of Alabama. We agree with the district court's decisions to apply collateral estoppel to the findings of the administrative law judge, grant the motion of the United States for summary judgment, and award the United States damages in the amount provided by 12 U.S.C. § 1715z–4a(c) (1988). Accordingly, we AFFIRM the district court's order.

## I. BACKGROUND

### A. *Factual Background*

Peppertree Apartments, City Court II Apartments, Rainbow Apartments, and College Manor Apartments are multifamily housing projects located in Alabama. Each of the projects was built with the proceeds of a loan which was insured against default by the Secretary of Housing and Urban Development ("HUD") under authority granted by 12 U.S.C. § 1715*l*(b) (1988). HUD provides such mortgage insurance "to assist private industry in providing housing for low and moderate income families and displaced families." 12 U.S.C. § 1715*l*(a) (1988).

Each of these four housing projects is owned by a separate partnership entity. However, Bailes is a managing or general partner in each of the entities. At all times relevant to this action, Bailes Realty Company, of which Bailes is the sole owner, was the managing agent for the bank accounts of each of the projects.

In consideration for the mortgage insurance provided by HUD, each of the housing projects entered into an identical regulatory agreement with HUD. Each of the agreements was signed by Bailes, on behalf of the project owners, as managing partner, partner or general partner. The agreements prohibit project owners from using project income or other assets for any purpose other than "reasonable operating expenses and necessary repairs" without the prior written approval of HUD. R1–4–Ex.A ¶ 8(b). The agreements further provide that the expenditure of project funds is prohibited unless the project has "surplus cash" and certain other conditions are met. R1–4–Ex.A ¶ 8(e). In the event the project owners violate any provision of these agreements, the agreements provide that HUD may

> [a]pply to any court, State or Federal, for specific performance of this Agreement, for an injunction against any violation of this Agreement, for the appointment of a receiver to take over and operate the project in accordance with the terms of the Agreement, or for such other relief as may be appropriate, since the injury to [HUD] arising from a default under any

---

* Honorable Charles A. Moye, Jr., Senior U.S. District Judge for the Northern District of Georgia, sitting by designation.

of the terms of this Agreement would be irreparable and the amount of damage would be difficult to ascertain.

R1–4–Ex.A ¶ 14(d).

B. *Procedural Background*

Claiming that Bailes had made expenditures in violation of the regulatory agreements, HUD determined that Bailes should be debarred from participation in HUD programs for a period of five years. After receiving notice of his proposed debarment, Bailes requested a hearing before HUD's Board of Contract Appeals. An administrative judge of HUD's Board of Contract Appeals conducted a quasi-judicial proceeding, including an evidentiary hearing, after which she ruled from the bench. The administrative judge found that Bailes had made a net distribution of $90,311 in project funds to money market accounts in his name and that he had not replaced that money despite knowing that those distributions violated the regulatory agreements. The administrative judge further found that as of the date of the hearing Bailes had not accounted for or repaid interest earned on these money market accounts. Accordingly, Bailes and his affiliate, Bailes Realty Company, were debarred from participation in HUD programs for five years.

The United States filed suit in the district court, seeking to recover from Bailes and the other project owners the $90,311 that had not been returned to the projects' accounts as well as statutory damages. The United States then filed a motion for summary judgment, contending that collateral estoppel barred the relitigation of issues raised in the administrative proceeding. The district court granted the government's motion for summary judgment, and awarded the government double damages and costs as authorized by section 1715z–4a(c).

Bailes filed a motion in the district court, requesting that court to reconsider the award of double damages. Bailes noted that section 1715z–4a(c), the authority pursuant to which the district court awarded double damages, was passed in 1987, while the violations of the regulatory agreements took place in 1985 and earlier. Bailes contended that this statutory provision for double damages was not to be applied retroactively. The district court disagreed, and denied Bailes's motion.

Bailes now challenges the district court's use of collateral estoppel, grant of summary judgment in favor of the United States and award of double damages.

## II. DISCUSSION

A. *Collateral Estoppel*

■ " 'The doctrine of collateral estoppel precludes a party from relitigating an issue that was fully litigated in a previous action.' " *Palciauskas v. United States,* 939 F.2d 963 (11th Cir.1991) (quoting *Deweese v. Town of Palm Beach,* 688 F.2d 731, 733 (11th Cir.1982)). Collateral estoppel may prevent the relitigation in a judicial action of issues of fact previously decided in an administrative proceeding. *Pantex Towing Corp. v. Glidewell,* 763 F.2d 1241, 1245 (11th Cir.1985).

> [W]hen an administrative body has acted in a judicial capacity and has issued a valid and final decision on disputed issues of fact properly before it, collateral estoppel will apply to preclude relitigation of fact issues only if: (1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision.

*Id.* The district court properly applied the doctrine of collateral estoppel to preclude the relitigation of the issues of fact determined by the administrative judge of HUD's Board of Contract Appeals.

1. Identity of the Parties

The first part of the *Pantex Towing* test clearly has been met. The parties involved in the administrative proceeding before HUD's Board of Contract Appeals were Bailes, Bailes Realty Company and the

government. The parties to this action are Bailes, Bailes Realty Company, the four housing projects, and the government. Bailes is a general partner of each of the partnership owners of the housing projects. Accordingly, the parties involved in this action are either the parties involved in the administrative action or the privies of Bailes, a party to the original action. Furthermore, the district court's order granting the government's motion for summary judgment and double damages provides that "the United States shall have and recover from *George L. Bailes, Jr.*, the sum of ... $180,622 and costs." R1–9 (emphasis added). Thus, the parties affected by the administrative proceeding and the events in the district court are the same.

### 2. Identity of the Issues

The issue addressed by both the administrative judge and the district court was whether Bailes distributed project funds in violation of the regulatory agreements. The complaint filed by HUD with the Board of Contract Appeals charged Bailes with making disbursements from project funds in violation of the regulatory agreements. R1–4–Ex.E–2 at 5. The administrative judge recognized that this was an issue at the administrative hearing. R1–4–Ex.E–4 at 538 ("HUD charged as grounds for debarment, that George Bailes violated the Regulatory Agreement ... [by] making unallowable distribution[s] of project funds...."). The claim filed by the United States in the district court alleged that the regulatory agreements had been violated by the prohibited disbursement of project funds. Thus, the factual issue to be addressed by the district court was the same issue previously before the administrative judge.

### 3. Adequate Opportunity

Bailes had an adequate opportunity to litigate the relevant issue in the administrative hearing, i.e., whether he disbursed project funds in violation of the regulatory agreements. The proceedings before the administrative judge were quasi-judicial in nature and included an evidentiary hearing.

Furthermore, Bailes stipulated that numerous disbursements of project funds were made to money market accounts. Thus, Bailes had an adequate opportunity to litigate the issue of whether he distributed project funds in violation of the regulatory agreements.

### 4. Actually Litigated

The issue of whether Bailes disbursed project funds in violation of the regulatory agreements actually was litigated and determined in the administrative hearing. The administrative judge stated that "[t]he most serious charge [against Bailes] involves the movement of project operating funds into money market accounts where they were commingled with non-project monies in violation of the Regulatory Agreement." R1–4–Ex.E–4 at 550–51. The administrative judge then determined that more than $90,000 of that money had not been replaced and that "interest earned by those project funds has not been accounted for or replaced." *Id.* at 551. She further described Bailes's transfer of project funds into money market accounts as "wholesale violations of ... the Regulatory Agreement." *Id.* Accordingly, the issue of whether Bailes violated the regulatory agreements clearly was litigated and determined in the administrative proceeding.

### 5. Necessary to the Administrative Decision

The administrative judge's determination that Bailes had disbursed project funds in violation of the regulatory agreement was necessary to the administrative decision to debar Bailes from further participation in HUD programs for five years. The administrative judge found the charge against Bailes of wrongful disbursement of project funds to be the most serious charge against him. *Id.* at 552. Furthermore, the administrative judge stated that her decision to debar Bailes from further participation in HUD programs for five years was based on the financial violation of the regulatory agreements. *Id.* at 553–54. Thus, the administrative judge's finding that Bailes had made unauthorized use of

project funds was essential to her administrative decision.

The district court properly applied the five-part *Pantex Towing* test. Accordingly, the district court correctly determined that the doctrine of collateral estoppel precluded the relitigation of the factual issues before HUD's Board of Contract Appeals.

### B. *Summary Judgment*

■ When reviewing a district court's grant of a motion for summary judgement, we employ the standard applied by the district court when that court considered the motion. *Martin v. Commercial Union Ins. Co.*, 935 F.2d 235, 238 (11th Cir.1991). Thus, we examine the evidence in the light most favorable to the non-moving party and determine whether there exist any genuine issues of material fact which would preclude the grant of summary judgment. *Id.* As discussed above, the doctrine of collateral estoppel precluded the relitigation of factual issues determined by HUD's Board of Contract Appeals. The district court recognized that the administrative judge considered and resolved the material fact issues in this case:

> The Administrative Judge found that Bailes had made a net distribution of $90,311.00 to his money market accounts and that he had not replaced that money despite knowing that these distributions violated the regulatory agreements. The Administrative Judge also found that as of the date of the hearing Bailes had not accounted for or repaid interest earned on these accounts.

R1–8–2 (footnotes and citation omitted). Thus, the district court properly granted the government's motion for summary judgment.

### C. *Retroactive Application of 12 U.S.C. § 1715z–4a(c)*

■ Pursuant to 12 U.S.C. § 1715z–4a(c),[1] the district court awarded the United States damages in the amount of $180,622—double the amount of project funds disbursed in violation of the regulatory agreements. Because Bailes's violations of the regulatory agreements occurred before section 1715z–4a(c) was enacted, Bailes contends that the district court should not have awarded the government double damages. We disagree.[2]

■ First, the change in section 1715z–4a(c) was remedial in nature. The statutory change provided that the government's remedy for the unauthorized use of housing project funds was the recovery of double damages, i.e., damages equal to double the value of the assets distributed in violation of the regulatory agreement. Statutory changes that are remedial in nature apply retroactively. *Lussier v. Dugger*, 904 F.2d 661, 665 (11th Cir.1990) (quoting *United States v. Vanella*, 619 F.2d 384, 386 (5th Cir.1980)); *see also United States v. Fernandez–Toledo*, 749 F.2d 703, 705 (11th Cir.1985) ("[C]ases in this circuit have held that new statutes ... that affect only ... remedy will apply retroactively.").

■ Second, "a court is to apply the law in effect at the time it renders its decision,

---

**1.** Section 1715z–4a(c) provides:

In any judgment favorable to the United States entered under this section [entitled "Double damages remedy for unauthorized use of multifamily housing project assets and income"], the Attorney General may recover double the value of the assets and income of the project that the court determines to have been used in violation of the regulatory agreement or any applicable regulation, plus all costs relating to the action, including but not limited to reasonable attorney and auditing fees. Notwithstanding any other provision of law, the Secretary may apply the recovery, or any portion of the recovery, to the project or to the applicable insurance fund under the National Housing Act.

**2.** Bailes also claims that section 1715z–4a(c) does not apply to him because he is not a

"person" within the meaning of that section. This claim is without merit. Section 1715z–4a(a)(2) defines "person" as

any person or entity which owns a project, as identified by the regulatory agreement, including but not limited to any stockholder holding 25 percent or more interest of a corporation that owns the project; any beneficial owner under any business or trust; any officer, director, or partner of an entity owning the project; and any heir, assignee, successor in interest, or agent of any owner.

Bailes was a partner of each of the partnerships owning the projects and the owner of Bailes Realty Company, the manager of each of the projects. He clearly is a "person" within the meaning of section 1715z–4a(a)(2).

unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).[3] To determine whether retroactive application of section 1715z–4a(c) would result in manifest injustice, *Bradley* requires that we review three factors: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.* at 717, 94 S.Ct. at 2019. Our review of these factors leads us to the conclusion that manifest injustice would not result from the retroactive application of section 1715z–4a(c).

"The first consideration, the nature of the parties, arises from the distinction ... between private disputes and 'great national concerns.'" *United States v. Marengo County Comm'n,* 731 F.2d 1546, 1554 (11th Cir.1984). This case is not merely the result of a dispute between two private individuals. Rather, it involves HUD, an administrative agency of the federal government, and an issue of national concern, the utilization of private industry for the provision of housing for low and moderate income families and displaced families. Thus, consideration of the first *Bradley* factor supports the retroactive application of the double damages penalty of section 1715z–4a(c).

We next consider the nature of the parties' rights. "The Court has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley,* 416 U.S. at 720, 94

S.Ct. at 2020. Section 1715z–4a(c) does not affect any substantive right of Bailes. The change in the statute was remedial. As discussed above, the remedial nature of the statutory change supports the retroactive application of section 1715z–4a(c). Furthermore, the regulatory agreements provide that HUD may seek any "relief as may be appropriate." R1–4–Ex.A ¶ 14(d).

The third *Bradley* factor requires us to consider whether "a new and unanticipated obligation[ ] [would be] imposed upon a party without notice or an opportunity to be heard." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2021. Section 1715z–4a(c) does not impose a new obligation upon Bailes. Instead, it imposes an additional remedy on already proscribed conduct. As stated by the district court, "[t]he statute imposed no new obligation; it merely reinforced an existing one." R1–14–3. Thus, after consideration of the factors set forth in *Bradley,* we determine that the application of section 1715z–4a(c) to this case does not result in "manifest injustice."

Under *Bradley,* we also must determine from the statute itself and its legislative history whether Congress intended the statute to apply prospectively only. The text and legislative history of section 1715z–4a(c) are silent on this issue. Accordingly, we hold that the district court correctly held Bailes responsible for double damages as provided by section 1715z–4a(c).

AFFIRMED.

---

3. We recognize that there exists some confusion as to the applicability of this *Bradley* analysis. *See Wright v. Director, Fed. Emergency Management Agency,* 913 F.2d 1566, 1573 (11th Cir. 1990) ("[T]he principle affirmed in *Bradley* has generated some confusion in the federal courts, since it appears to conflict with the ... long-standing rule of statutory construction, restated in *Bowen* [*v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ], that favors the prospective application of statutes and regulations."). The Supreme Court has declined to clarify this confusion. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, ——, 110 S.Ct. 1570, 1577,

108 L.Ed.2d 842 (1990) ("We need not in this case ... reconcile the two lines of precedent represented by *Bradley* ... and [*Bowen* ]...."). This circuit has relied upon the *Bradley* analysis to determine the retroactive application of statutory changes. *See Federal Deposit Ins. Corp. v. 232, Inc.,* 920 F.2d 815, 818 n. 4 (11th Cir.1991) (The court provided several examples of this circuit's utilization of the *Bradley* analysis.). Thus, unless otherwise directed by the United States Supreme Court or the Eleventh Circuit en banc, we are bound by precedent to apply the *Bradley* analysis. *See United States v. Thomas,* 916 F.2d 647, 652 n. 6 (11th Cir.1990).