**Anne Rebecca LONG**

v.

**Kenneth CARR, Chairman, Nuclear Regulatory Comm.**

**No. 1:88–CV–263–RCF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 31, 1992.

Jonathan A. Zimring, Zimring & Ellin, Atlanta, Ga., for plaintiff.

Daniel A. Caldwell, III, Office of U.S. Atty., N.D. Ga., Atlanta, Ga., for defendant.

## ORDER

RICHARD C. FREEMAN, Senior District Judge.

This action is before the court on Magistrate Judge Feldman's Report and Recommendation [# 60–1], and on plaintiff's motions to introduce additional evidence [# 67–1], amend the pretrial order and complaint [# 67–2], and try the case to a jury [# 67–3]. Both plaintiff and defendant have filed objections to Magistrate Feldman's Report and Recommendation, and defendant opposes each of plaintiff's motions.

## BACKGROUND

Plaintiff is a female employed by the Nuclear Regulatory Commission [NRC]. She alleges that defendant failed to promote her because of her gender, discriminated against her in retaliation for raising charges of sexual discrimination, and sexually harassed her in violation of the Civil Rights Act.[1] Accordingly, in February of 1988, plaintiff filed this action pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq.). At that time, she demanded a jury trial. Thereafter, the case was referred to Magistrate Judge Feldman, although plaintiff objected to the referral and continued to seek a jury trial. Plaintiff's Memorandum of Law in Support of her Motion to Amend, at 1.

The Magistrate Judge heard evidence on plaintiff's claims in March of 1990 and rendered his Report and Recommendation in October of 1991. That report concluded that plaintiff had failed to establish a *prima facie* case of disparate treatment or retaliation. Report and Recommendation, at 30. Magistrate Judge Feldman determined that defendant successfully rebutted plaintiff's claims of sex discrimination, by demonstrating "legitimate business concerns" for his actions. Judge Feldman also found that plaintiff failed to prove a pretext, as was necessary to overcome the defendant's showing of a legitimate nondiscriminatory reason for his actions. *Id.* at 31.

Then, on November 21, 1991, President Bush signed the Civil Rights Act of 1991. The general provisions portion of the 1991 Act establishes that the Act and its amendments "shall take effect upon enactment." 1991 Civil Rights Act, § 402(a). The Act also allows a complaining party to seek compensatory damages in cases of intentional discrimination and permits a party seeking damages under section 102 of the Act to demand a trial by jury.[2] Plaintiff relies on the new Act to renew her request for a jury trial and to assert a right to compensatory damages. In essence, plaintiff asks the court to apply the Civil Rights Act of 1991 retroactively.[3]

---

**1.** In her Complaint, plaintiff also requested damages pursuant to the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d). This court transferred that claim to the Court of Claims by its order of February 27, 1990.

**2.** Section 102 of the Civil Rights Act of 1991 provides:

(a) RIGHT OF RECOVERY.—

(1) Civil Rights.—In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 20003–5) against a respondent who engaged in unlawful intentional discrimination ... prohibited under section 703, 704, or 717 of the Act ... and provided that the complaining party cannot recover under section 1977 of the revised Statutes (42 U.S.C. 1981), the complaining party may recover compensatory and punitive damages as allowed in subsection (b) ... from the respondent.

. . . . .

(c) JURY TRIAL.—If a complaining party seeks compensatory or punitive damages under this section—

(1) any party may demand a trial by jury. . . .

**3.** The court recognizes that the term retroactive is sometimes used to refer to the application of a law to a case that has reached a final judgment; however, this court uses the term retroactive to mean the application of the law to a pending, non-final judgment only, and expresses no opinion on the application of the new Act to final judgments.

## DISCUSSION

■ As discussed above, the Civil Rights Act of 1991 states that it becomes effective upon enactment, *See* 1991 Act § 402(a); nevertheless, the Act provides no definition or elucidation of "effective". Therefore, the courts are struggling to determine whether the Act is supposed to apply only to conduct occurring after the passage of the Act, or whether the new law governs cases pending when the President ratified the Act. *See e.g., Hicks v. Brown Group, Inc. d/b/a Brown Shoe Company Inc.,* 952 F.2d 991 (8th Cir.1991) (question of retrospective effect of the Civil Rights Act of 1991 should be presented to the Supreme Court in a petition for writ of Certiorari); *Stender v. Lucky Stores Inc.,* 780 F.Supp. 1302 (N.D.Cal.1992) (applying the Civil Rights Act of 1991 retroactively); *King v. Shelby Medical Center,* 779 F.Supp. 157 (N.D.Ala.1991) (applying the Civil Rights Act of 1991 retroactively to allow a jury trial, because the right to a jury trial is procedural); *Mojica v. Gannett Co., Inc.,* 779 F.Supp. 94 (N.D.Ill.1991) (applying the 1991 Act to pending cases); *La Cour v. Harris County,* No. H–89–1532, 1991 WL 321020 (S.D.Tex.1991) (applying the Act retroactively without analysis); *James v. American International Recovery, Inc.,* No. 1:89–CV–321–RHH, 1991 WL 281734, 1991 U.S.Dist.Lexis 18408 (N.D.Ga.1991) (held, without analysis, that the Civil Rights Act of 1991 does not apply retroactively).

**4.** The language in the Civil Rights Act of 1991 is far from explicit on the issue of retroactivity. Section 402 of the new Act provides:

(a) IN GENERAL.—Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment.

(b) CERTAIN DISPARATE IMPACT CASES.—Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

Applying typical rules of construction to give full effect to all portions of the Act leads one to conclude that the portions of the Act not specifically limited in § 402(b) should apply retroactively. *See Stender v. Lucky Stores Inc.,* 780 F.Supp. 1302 (N.D.Cal.1992) (holding that the

If congress had clearly expressed its intent to apply the Act, either retroactively or prospectively, this court would be bound by that decision.

However, neither the language of the Act,[4] nor the legislative history [5] explicitly indicates whether the Act should apply retroactively.

Moreover, existing legal precedent outlines two distinct and contradictory rules for determining whether a court should apply a statute retroactively. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) (there are two lines of precedent represented by *Bradley v. Richmond School Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) and *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988)). In *Bradley,* the Court announced the rule that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016. In contrast, the Court in *Bowen* announced: "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen,* 488 U.S. at 208, 109 S.Ct. at 471 (citing *Greene v. United States,* 376 U.S. 149, 160,

new Act applies retroactively and citing *Kungys v. U.S.,* 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839 (1988), for the proposition that no provision of a statute should be construed so as to render another portion of the statute entirely redundant).

**5.** Early in the legislative process, Senator Danforth, a co-sponsor of the legislation, stated that the new Act was to apply prospectively only; however, Senator Kennedy expressed disagreement with that view. *See Mojica,* at 96 (citing 137 Cong.Rec. S15,483 (daily ed. Oct. 30, 1991)). Ultimately, Senator Danforth conceded that there was no clear legislative history, only various and inconsistent statements from a number of senators and representatives and that any court seeking to interpret the statute should look to the language of the statute, not the statements of the legislators, and apply appropriate rules of construction. *Id.*

84 S.Ct. 615, 621–622, 11 L.Ed.2d 576 (1964)).

Despite the confusion and conflict in the United States Supreme Court decisions, the Eleventh Circuit precedent is clear. In *U.S. v. Peppertree Apartments*, 942 F.2d 1555, 1561 n. 3 (11th Cir.1991), *petition for cert. filed,* December 26, 1991, the court recognized the apparent conflict between *Bradley* and *Bowen,* noted the history of the Eleventh Circuit's prior reliance on the *Bradley* analysis, and declared: "[U]nless otherwise directed by the United States Supreme Court or the Eleventh Circuit en Banc, we are bound by precedent to apply the *Bradley* analysis." This court is bound to follow the established precedent of *Peppertree;* therefore, it finds the rule of *Bradley* applicable to this action. Accordingly, the court will apply the Civil Rights Act of 1991 retroactively, unless manifest injustice will result.

In *Peppertree,* the defendants had borrowed money to build several multifamily housing projects, and the government insured the defendants' loan against default. Because the government provided defendants with mortgage insurance, defendants entered into a regulatory agreement with the Secretary of Housing and Urban Development [HUD]. Later, defendants disbursed apartment project funds in violation of that regulatory agreement. In turn, the government sued to recover unreturned project funds and sought statutory damages for the violation. The statute at issue in *Peppertree* was enacted *after* the defendants violated the regulatory agreement. Because the statute was non-existent when defendants violated the regulatory agreement, defendants argued that the government could not recover statutory damages pursuant to the statute.

The Eleventh Circuit wholly rejected the defendants' arguments. The court first noted that the statute at issue was "remedial in nature," and that "[s]tatutory changes that are remedial in nature apply retroactively." *Peppertree,* at 1560 (citing

*Lussier v. Dugger,* 904 F.2d 661, 665 (11th Cir.1990)). Next, the court applied the *Bradley* rule outlined above, *Peppertree,* at 1560–1561, and concluded that no manifest injustice would result in applying the damages statute retroactively because: (1) the case was not "merely the result of a dispute between two private individuals," *id.* at 1561, but rather, involved "an issue of national concern" *id.;* (2) retroactive application of the statute would not "'. . . infringe upon or deprive a person of a right that had matured or become unconditional'" *id.,* at 1561 (citing *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020); and (3) no "new and unanticipated obligation would be imposed upon a party without notice or an opportunity to be heard." *Id.* at 1561.

Like the statute at issue in *Peppertree,* the Civil Rights Act of 1991 is remedial in nature. It provides that a complaining party may recover compensatory and punitive damages. 1991 Civil Rights Act, § 102. Indeed, one of the primary purposes of the Act is to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace. *Id.,* § 3. Therefore, the court will allow plaintiff to amend the pretrial order [6] to include her claim for compensatory damages, as provided for in § 102 of the Act, unless manifest injustice will result from the amendment.

Furthermore, because this court is bound by *Peppertree* to apply the law in effect at the time it renders its decision, plaintiff is also entitled to a jury trial, unless manifest injustice will result therefrom. Therefore, the court will follow the *Peppertree* decision and address three factors to ascertain whether manifest injustice will result in this case: (a) the nature and identity of the parties; (b) the nature of their rights; and (c) the nature of the impact of the change in the law upon those rights.

**(a) Nature and Identity of the Parties**

The court finds the reasoning in *Bradley* persuasive on this aspect of the manifest

---

**6.** Although plaintiff has moved to amend both her Complaint and the Pretrial Order, an amendment of the Pretrial Order alone will accomplish plaintiff's purpose. (The Pretrial Order supersedes prior pleadings). LR 235–4, NDGa.

injustice test. *Bradley* is a school desegregation case in which the prevailing plaintiffs sought attorneys' fees pursuant to a statute that was enacted during the lawsuit. In deciding whether the statute in question applied to attorneys' services that were rendered before the provision was enacted, the United States Supreme Court first noted a distinction between " 'mere private cases between individuals' " and those, like *Bradley,* involving publicly funded governmental entities. *See Bradley,* 416 U.S. at 717, 94 S.Ct. at 2019. Then, the Court concluded that plaintiffs, parents and guardians of black school children, had rendered a substantial service to the defendant school board and to the community at large by forcing the school board to comply with the constitutional mandates that prohibit discrimination. *Id.* Similarly, assuming, without deciding, that plaintiff's claims in the case *sub judice* are true, she acts "not for [her]self alone but also as a 'private attorney general' vindicating a policy that Congress considered of the highest priority." 416 U.S. at 719, 94 S.Ct. at 2020. This case, like *Peppertree,* is "not merely the result of a dispute between two private individuals. Rather, it involves [NRC] an administrative agency of the federal government, and an issue of national concern...." *Peppertree,* 942 F.2d at 1561. Thus, the nature and identity of the parties in this case favor plaintiff's motion for a jury trial and motion to amend the Pretrial Order.

**(b) Nature of the Parties' Rights**

"The second aspect of the [c]ourt's concern that injustice may arise from retrospective application of a change in law relates to the nature of the rights effected by the change." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020. "The Court has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional." *Peppertree,* at 1561 (citing *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020). After careful consideration of counsel's arguments and a thorough review of the pleadings, this court finds that allowing plaintiff to amend the Pretrial Order to add a claim for compensatory damages and to try her case before a jury will not deprive defendant of a matured or unconditional right. Certainly, defendant retains the right to introduce all admissible evidence and to fully present his case at trial.

**(c) Nature of the Impact of Change on Parties' Rights**

The third aspect of the manifest injustice test requires this court to "consider whether 'a new and unanticipated obligation would be imposed upon a party without notice or an opportunity to be heard.' " *Peppertree,* 942 F.2d at 1561 (quoting *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2021). Like the statute at issue in *Peppertree,* the damages portion of the Civil Rights Act of 1991 imposes no new obligation on defendant. "Instead, it imposes an additional remedy on already proscribed conduct." *Id.* Moreover, as discussed above, allowing plaintiff to try this case before a jury permits plaintiff to exercise her statutory rights. Defendant still has an opportunity to be heard and to introduce evidence in support of his case. Accordingly, after a full review of the factors outlined in *Bradley,* the court finds that allowing plaintiff's amendments will not result in manifest injustice to either party.

Therefore, the court declines to follow the Report and Recommendation of Magistrate Judge Feldman [# 60–1]. Plaintiff's motions to introduce additional evidence [# 67–1] and to try the case to a jury [# 67–3] are GRANTED. Plaintiff's motion to amend the Pretrial Order and Complaint [# 67–2] is GRANTED in PART and DENIED in PART. The parties are DIRECTED to file an amended consolidated Pretrial Order within twenty (20) days of the entry of this order. If the parties fail to comply with the above deadline, the Clerk is DIRECTED to resubmit this action.

SO ORDERED.