**Kimberly JOYNER, Plaintiff,**

v.

**MONIER ROOF TILE, INC., Defendant.**

**No. 91–6925–CIV.**

United States District Court,
S.D. Florida.

Feb. 4, 1992.

---

William Amlong of Amlong & Amlong, P.A., Ft. Lauderdale, Fla., for plaintiff.

Daniel Abbott of Blackwell & Walker, P.A., Miami, Fla., for defendant.

## ORDER ON MOTION FOR LEAVE TO AMEND

PAINE, District Judge.

This matter comes before the court on the Motion for Leave to Amend and Demand for Jury Trial ("Motion to Amend") (DE 8) filed by the Plaintiff, KIMBERLY JOYNER ("JOYNER"). Having reviewed the record, the memoranda of counsel, and relevant authorities, the court enters the following order.

### I. BACKGROUND

*The Unforgettable Firing*

On October 24, 1991, the Plaintiff commenced this action seeking remedies avail-

able under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17. In her Complaint (DE 1), JOYNER asserted that she was discriminated against and terminated by her employer, MONIER ROOF TILE, INC. ("MONIER"), because she was pregnant.

On November 21, 1991, President Bush enacted the Civil Rights Act of 1991 ("Act of 1991" or "Act"), which amended Title VII and provided new remedies for victims of intentional discrimination and unlawful harassment in the workplace. JOYNER thereafter sought leave to amend her Complaint in order to secure additional remedies available to her under the recent congressional enactment, namely compensatory and punitive damages, attorneys' fees and a trial by jury. It was JOYNER's contention that amendment should be allowed because the language of the Act of 1991, its legislative history, and decisions of the United States Supreme Court demonstrated that the further remedies under the new Act were available to victims of discrimination that occurred prior to the date of enactment, November 21, 1991. MONIER surprisingly responded that it "does not object to the Plaintiff's Motion." *See* Response to Plaintiff's Motion for Leave to Amended (sic) Complaint (DE 9).

## II. ANALYSIS

### Making Amends

■ Although leave to amend is within the sound discretion of the trial court, it is not automatic. *Nat'l Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d 246 (11th Cir.1982); *Kreuzfeld v. Carnehammar*, 138 F.R.D. 594, 609 (S.D.Fla.1991). Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading [1] only by leave of court or by written consent of the adverse party, and that "leave shall be freely given when justice so requires." In determining whether to allow amendment, the district court must take into account factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Bamm v. GAF Corp.*, 651 F.2d 389, 391 (5th Cir.1981).[2]

The court would likely grant leave to amend a pleading raising a common law theory, such as breach of contract or tort, since the Defendant has expressly consented to the amendment. But this situation is different in that JOYNER's cause of action is derived from a congressional enactment and the proposed Amended Complaint attempts to secure additional remedies unavailable to her at the time she commenced this proceeding. Consequently, as an additional caveat to the question of whether "justice so requires," the court must determine whether the Civil Rights Act of 1991 is retroactive in application.[3] If it does not, any attempt at amendment is merely an exercise in futility.

1. The term "pleading" must be interpreted in conjunction with Rule 7(a), which enumerates the pleadings permitted in federal practice: a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, a third-party answer, and pursuant to a court order, a reply to an answer or third-party answer. 6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1475 (2d ed. 1990).

2. The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

3. The term "retroactive" is used in most court cases to refer to application of a law or decision to conduct occurring prior to passage of the law or issuance of the decision. Some courts and commentators differentiate between "retroactive" and "retrospective" application—the former referring to application of a new law or case to matured rights, e.g., to a case that has gone to final judgment, and the latter referring to application of a new law or case to pending controversies. The use of the term "retroactive" in this order refers to the latter category of cases, i.e., non-final controversies concerning pre-Act conduct.

### I Still Haven't Found What I'm Looking For

In determining whether the remedies of the Civil Rights Act of 1991 are available to a victim of discrimination, whose case was pending prior to November 21, 1991, one must begin with the intent of Congress. "The starting point ... 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must be ordinarily regarded as conclusive.'" *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, ——, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

An examination of the Act's language fails to reveal any clear indication that Congress intended the statute to apply retroactively. Subsection (a) of section 402[4] states that the Act is effective upon enactment, but makes no reference to Title VII employment actions currently pending in federal court. Hence, this nebulous provision can be viewed as neither supporting nor refuting retroactivity. Subsection (b)[5] does carve out an exception for disparate impact claims filed before March 1, 1975 and for which an initial decision was rendered prior to October 30, 1983.[6] This provision, however, is directed only towards parties in litigation related to *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989),[7] a

Supreme Court decision legislatively overruled by section 105 of the Act.

Reading clauses (a) and (b) in conjunction, one district court has inferred that the Act of 1991 applies to cases which were pending at the time of enactment. *Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302 (N.D.Cal.1992) ("[T]he only interpretation of Section 402 that does not make clause (b) meaningless is that the Act is applicable to cases which were pending at the time of its enactment, with the exception of *Wards Cove*."). This court agrees with *Stender* that it is plausible to read section 402(b) as supporting retroactive application.

Likewise, section 109, an amendment legislatively overruling the Supreme Court decision *EEOC v. Arabian Amn. Oil Co.*, —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), may be read as supporting retroactive application. Section 109 provides that amendments made by this portion of the legislation do "not apply with respect to conduct occurring before the date of the enactment of this Act." One could logically infer from this language that Congress would not have included this provision if it did intend the remainder of the Act to apply prospectively.

The use of deduction in statutory construction cannot, however, be regarded as conclusive. Indeed, in sharp contrast to *Stender*, another recent opinion has applied similar reasoning to hold that section 102 of the Act, which permits a complaining party to seek compensatory and punitive

---

**4.** Section 402(a) provides: "In General.—Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment."

**5.** Section 402(b) provides: "Certain Disparate Impact Cases.—Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975 and for which an initial decision was rendered after October 30, 1983."

**6.** The present case is not based on a disparate impact theory.

**7.** It is apparent from the legislative history section 402(b) was inserted solely to insure that the Act would not be interpreted to allow further litigation in *Wards Cove*. Senator Murkowski,

who drafted Section 402(b), indicated that this portion of the statute was intended to limit the retroactive application of the Act with respect to the *Wards Cove* case. 137 Cong.Rec. S15,953 (daily ed. Nov. 5, 1991). Senator Dole concurred in this view: "At the request of the Senators from Alaska, section 22(b) specifically points out that nothing in the Act will apply retroactively to the Wards Cove Packing Company, an Alaska company that spent 24 years defending against a disparate impact challenge." 137 Cong.Rec. S15,478 (daily ed. Oct. 30, 1991). Moreover, according to Rep. McDermott, President Bush is reported to have threatened to veto the legislation unless the exemption for *Wards Cove* was included. See 137 Cong.Rec. H9,506 (daily ed. Nov. 7, 1991).

damages and a trial by jury, is prospective in nature:

> According to section 102(a) of the Act, 'complaining parties' may seek compensatory and—in suits against private employers—punitive damages. Section 102(d) defines a 'complaining party' as 'the Equal Employment Opportunity Commission, the Attorney General, or a person who may bring an action or proceeding under title VII....' By its terms, the statute seems to contemplate that only plaintiffs who have not yet brought their actions are entitled to invoke the new Act.

*Van Meter v. Barr*, 778 F.Supp. 83, 85 (D.D.C.1991).

The *Van Meter* interpretation of section 102, like that of *Stender* with respect to section 402, appears equally plausible. As a result, the undersigned concludes that the presence of sections 402(b) and 109 demonstrates, at most, that where Congress wished to express any intent concerning the application of the Act, it took the initiative to state so specifically. *See also Khandelwal v. Compuadd Corp.*, 780 F.Supp. 1077, (E.D.Vir.1992).

### *A Car in Every Garage, a Chicken in Every Pot and Every Man a King*

Arguably, if Congress intended for the entire Act to apply retroactively, it would have provided so. Judge William Acker from the Northern District of Alabama has lamented over the legislative branch's failure, "for no good reason," to include in the statute itself a provision for either retroactive or prospective application. *King v. Shelby Medical Ctr.*, 779 F.Supp. 157, 157 (N.D.Ala.1991). While such clarity would have spared many hours of judicial labor, the undersigned, in the words of Aaron

Neville, must "Tell it Like it Is": Congress intentionally omitted any reference to the Act's application for purely political reasons.

The signing of the new Act on November 21, 1991 culminated an often bitter two year effort by many members of Congress to enact some form of civil rights protection. The targets of the legislation, as originally introduced in February of 1990, were five decisions handed down by the Supreme Court during 1989:

> These decisions had (1) narrowed the coverage of civil rights statutes,[8] (2) broadened the situations under which affirmative action plans could be challenged after the fact,[9] (3) narrowed the situations under which a discriminatory seniority plan could be challenged,[10] (4) made it more difficult for plaintiffs to prevail as to 'disparate impact' claims,[11] and (5) made it more difficult for employees to establish liability in cases where the employer's motivation was a mixture of legitimate and discriminatory reasons.[12]

Lex K. Larson, Civil Rights Act of 1991, at 6 (1992).

The 1990 version of the legislation contained extensive provisions that would have provided, in varying degrees, for retroactive application of the bill to pending cases. *See* 136 Cong.Rec. H9,554 (daily ed. Oct. 12, 1990). President Bush vetoed this bill, and the attempt to override his veto failed by just one vote. *See* Ann Devroy, *Bush Vetos Civil Rights Bill; Measure Said to Encourage Job Quotas; Women, Minorities Sharply Critical*, Washington Post, Oct. 23, 1990, at A1 and Helen Dewar, *Senate Upholds Civil Rights Bill Veto, Dooming Measure for 1990*, Washington Post, Oct. 25, 1990, at A15.[13] Because the

---

8. *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

9. *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989).

10. *Lorance v. AT & T Technologies*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989).

11. *Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).

12. *Price–Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

13. After the 1990 bill's veto and prior to the 1991 Act's passage, the Supreme Court handed down two more decisions that affected civil rights litigation. One limited a prevailing party's ability to recover fees for expert witnesses, *West Virginia Univ. Hosp. Inc. v. Casey*, —— U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), while another limited the coverage of Title VII

Act of 1991 contains none of the provisions found in the 1990 legislation, one could conclude that the statute was left purposely vague in an attempt to secure passage and enactment.[14]

This, however, did not preclude many senators and congressmen from deliberately attempting to create a "legislative history" to support their personal views on whether the new civil rights legislation should be applied retroactively. "The congressional 'debates' were, with few exceptions, hardly more than a series of declaration and counterdeclarations, which often addressed 'retroactivity' without ever defining that term or focusing on the crucial, separate problem at issue here...." *Van Meter*, 778 F.Supp. at 84. As a general rule, the rhetoric fell along party lines. For example, the principle sponsors of the Act in the Senate, Senators John Danforth and Edward Kennedy, issued a joint "interpretive memorandum" in which they agreed on every issue concerning the Act except its retroactivity. 137 Cong.Rec. S15,483 (daily ed. Oct. 30, 1991). *See Hansel v. Public Service Co. of Colo.*, 778 F.Supp. 1126 (D.Colo.1991). Republican senators and representatives lined up behind Senator Danforth, asserting that the Act was intended to be prospective, while democratic congressmen supported Senator Kennedy, arguing for retroactivity. 137 Cong.Rec. S15,485 (daily ed. Oct. 30, 1991).

Even the administration entered into the fray. On the day he signed the legislation into law, President Bush released a statement in which he presented his opinion that the 1991 Civil Rights Act should be applied prospectively. Daily Labor Report (BNA) (Nov. 22, 1991). In keeping with the administration's view, the Equal Employment Opportunity Commission ("EEOC") has stated that the damage provisions of the Act do not apply retroactively, but are to be considered as a remedy in all cases involving intentional discrimination. EEOC Notice No. 915.002 (Dec. 27, 1991). The EEOC has also stated that it will not seek damages under the Act for events occurring before November 21, 1991. *Id.*

Ultimately, Senator Danforth expressed the correct view that (1) there was no clear legislative history, only various and inconsistent statements from a number of senators and representatives; and (2) that any court seeking to interpret the statute should look to the language of the statute and apply appropriate rules of construction.[15] 137 Cong.Rec. S15,325 (daily ed. Oct. 29, 1991) and S15,483 (daily ed. Oct. 30, 1991).

### Reconstruction of the Fables

Having determined that the language and legislative history of the Act do not evidence a clear congressional intent for or against its retroactive application, the undersigned turns to the Supreme Court for guidance. The high Court has, however, adopted two seemingly contradictory approaches to application of a newly enacted federal statute where congressional intent is unclear.

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), held that retroactivity is disfavored and that congressional enactments and administrative rules will not be construed to have a retroactive effect unless their language requires otherwise. In sharp contrast, the Court in *Bradley v. Richmond School Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), invoked

---

in foreign employment, *EEOC v. Arabian Am. Oil Co.*, —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991). Thereafter, provisions which legislatively overruled these cases were included in the 1991 Act.

**14.** The Act itself has been labeled the "Danforth Compromise" in honor of Senator John Danforth. 137 Cong.Rec. H9,533 (daily ed. Nov. 7, 1991) (comments of Rep. Ford). Senator Orrin Hatch commented that Senator Danforth "did a terrific job ... in bringing the parties together

and in trying to accommodate and reach certain language that people could accept. I want to pay him special tribute for the efforts that he has made." 137 Cong.Rec. S15,497 (daily ed. Oct. 30, 1991).

**15.** "[B]oth Republicans and Democrats put all their eggs in the Supreme Court basket, each side hoping that the court would resolve its own conflicting authorities in its favor." J. Stephen Poor, *Rights Act's Retroactivity Still Disputed*, Nat'l L.J., Jan. 27, 1992, at 19.

the rule that one "is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." *See also Thorpe v. Durham Hous. Auth.*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). Thus, "even where the inter[vening] law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect." *Id.* 416 U.S. at 715, 94 S.Ct. at 2018.

■ As a means of easing the potentially harsh impact of broadening the retroactive application of congressional enactments, the *Bradley* Court recognized two exceptions to its rule of construction: the presumption does not govern where (1) there is clear congressional intent to the contrary, or (2) retroactive application would result in "manifest injustice." *Id.* at 711, 94 S.Ct. at 2016. A determination into whether retroactive application would result in manifest injustice requires the review of three factors: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.* at 717, 94 S.Ct. at 2019.

In *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, ——, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990), the Supreme Court acknowledged that there exists an "apparent tension" between the *Bradley* and *Bowen* lines of precedent. The majority, however, found no need to reconcile the apparent conflict because the statute at issue fell within one of the *Bradley* exceptions: there existed clear congressional intent against retroactivity. *Id.*, 494 U.S. at ——, 110 S.Ct. at 1577–78. In a concurring opinion, Justice Scalia criticized the Court for not taking up the challenge to resolve the two divergent lines of authority. Citing history, precedent and reason, he argued that *Bradley* should be discarded in favor of the traditional presumption against retroactive application of

statutes. *Id.*, 494 U.S. at ——, 110 S.Ct. at 1579.

Despite the existence of an alternative line of precedent, the Eleventh Circuit has chosen to adopt *Bradley* on several occasions. *See, e.g., Fed. Deposit Ins. Corp. v. 232, Inc.*, 920 F.2d 815 (11th Cir.1991); *Delmay v. Paine Webber*, 872 F.2d 356 (11th Cir.1989); *Tallahassee Mem. Regional Medical Ctr. v. Bowen*, 815 F.2d 1435 (11th Cir.1987), *cert. denied*, 485 U.S. 1020, 108 S.Ct. 1573, 99 L.Ed.2d 888 (1988); *United States v. Fernandez–Toledo*, 749 F.2d 703, 705 (11th Cir.1985). Recently, this position was reaffirmed leaving no doubt as to which line of precedent a judge in this circuit must apply: "[U]nless otherwise directed by the United States Supreme Court or the Eleventh Circuit *en banc*, we are bound by precedent to apply the *Bradley* analysis." *United States v. Peppertree Apartments*, 942 F.2d 1555, 1561 n. 3 (11th Cir.1991). This court, therefore, must apply the presumption of retroactivity announced in *Bradley* and that decision's Eleventh Circuit progeny. *See Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir.1991) (a district court is bound by the decision of this circuit.).[16]

### ... and Justice for All

■ Having concluded that neither the language nor the statutory history of the Act evidences clear congressional intent contrary to retroactivity, the issue arises whether such an application would amount "manifest injustice." The first consideration under this inquiry, "the nature of the parties, arises from the distinction between private disputes and 'great national concerns.'" *United States v. Marengo County Comm'n*, 731 F.2d 1546, 1554 (11th Cir. 1984). Explaining this factor, the *Bradley* court stated:

> in mere private cases between individuals, a court will and ought to struggle hard against a construction which will,

**16.** This court is aware that another judge in the Southern District of Florida recently held that the Act of 1991 applies prospectively. *Williams v. Healthcare Serv. Group, Inc.*, Case No. 87–8659–CIV–ZLOCH (S.D.Fla. Jan. 22, 1992). The

undersigned does not find this opinion persuasive insofar as that court applied *Bowen* in its analysis, failing to mention either *Bradley* or *Peppertree*, let alone *any* Eleventh Circuit decision.

by a retrospective operation, affect the rights of parties, but in great national concerns ... the court must decide according to existing laws.

*Bradley,* 416 U.S. at 712, 94 S.Ct. at 2016 (quoting *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801)).

■ Although the present case involves only private parties, the purpose of the Act of 1991, like the Civil Rights Act of 1964, is to promote equality in our nation and to provide a remedy for victims of discrimination and harassment in the workplace. While the private nature of this litigation is recognized, it is also understood that this case raises a matter of great national concern—remedying sexual discrimination. *Mojica v. Gannett Co., Inc.,* 779 F.Supp. 94, 98 (N.D.Ill.1991). Because JOYNER can be viewed as a "private attorney general," *Bradley,* 416 U.S. at 719, 94 S.Ct. at 2020, for the public interest, this factor weighs in favor of retroactive application.

■ The second prong, focusing on the nature of the parties rights must next be considered. Retroactive application is manifestly unjust if it "would infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020. The Eleventh Circuit has held that statutory changes which are "remedial" or "procedural" in nature apply retroactively, while those that render "substantive" changes apply prospectively. *Lussier v. Dugger,* 904 F.2d 661, 665 (11th Cir.1990). A law is "substantive" if it creates rights, duties, and obligations, while a "remedial" or "procedural" law simply prescribes the methods of enforcement of those rights. *Ferrero v. Associated Materials, Inc.,* 923 F.2d 1441, 1445–46 (11th Cir.1991).

■ The sections of the Act of 1991 that the Plaintiff cites are clearly remedial. By expressly allowing for the recovery of compensatory and punitive damages and attorneys' fees, sections 102 and 107 [17] augment remedies previously provided for by

Title VII. *Khandelwal,* 780 F.Supp. at 1082; *see Peppertree,* 942 F.2d at 1560 (retroactive application of statute allowing party to collect double damages not manifestly unjust). Moreover, the parties do not have a substantial right to a bench trial, whereas the right to trial by jury, even if statutorily granted, is entitled to substantial protection. Fed.R.Civ.P. 38(a). The distinction between trial by jury or trial by the court is simply one of procedure. Because sections 102 and 107 do not affect substantive rights, their retroactive application does not infringe upon matured rights.

■ The third *Bradley* factor considers whether "a new and unanticipated obligation" would be imposed upon a party without notice or an opportunity to be heard. *Bradley,* 461 U.S. at 720, 94 S.Ct. at 2020. The facts of this case do not support such a finding because the Defendant has no "matured" or "vested" right in the previously existing remedial scheme of Title VII. *Bristow v. Drake St., Inc.,* 1992 WL 14262 (N.D.Ill.1992). As noted, retroactive application of sections 102 and 107 would not impose an additional obligation on the MONIER, but merely supplement remedies available to JOYNER.

In short, there has been no finding of manifest injustice. The Plaintiff's Motion to Amend (DE 8) should and is the same granted.

The undersigned recognizes that a different conclusion was reached in *Jane Doe v. Bd. of County Comm'r, Palm Beach County, Fla.,* 783 F.Supp. 1379 (S.D.Fla. 1992), wherein the Plaintiff sought to amend Title VII and 42 U.S.C. § 1981 causes of action to take advantage of the new Act's provisions. In *Jane Doe,* the court employed *Bradley* to hold that retroactive application of those portions of the Act of 1991 relating to a § 1981 claim would amount to manifest injustice. *Id.* at 1382. The court next applied *Bradley* to the Plaintiff's Title VII claim. Although Judge Highsmith acknowledged that (1) the Eleventh Circuit has applied statutes that

**17.** Section 107 provides that, when a discriminatory motive contributes to, but is not determinative of, a Title VII violation, the Plaintiff may obtain a declaratory judgment, injunctive relief

other than reinstatement, and attorneys' fees and costs directly contributable to pursuit of the claim.

affect only procedure or remedy retroactively and (2) the Act's Title VII amendments, providing damages, jury trial, and attorneys' fees were either procedural or remedial, he proceeded to deny the Plaintiff leave to amend her Title VII claim. *Id.* at 1385. To do otherwise, in light of his finding with respect to the section 1981 claim, would require partial retroactive application of the Act. The *Jane Doe* court declined "to take such a piece-meal approach." *Id.* at 1385.

█ The undersigned does not share Judge Highsmith's reluctance to apply only certain portions of the Civil Rights Act of 1991. One of the purposes of the legislation, as noted in Section 3 of the Act, was "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights *statutes* in order to provide adequate protection to victims of discrimination." (emphasis added). Two of these relevant "civil rights statutes," 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, are both amended by separate sections of the Act.[18] As it has been long recognized that Title VII and section 1981 are separate and distinct causes of action for discrimination in employment, *Johnson v. Railway Express Agency*, 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975); *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1349 (11th Cir.1983), a determination regarding § 1981's retroactivity has no bearing on Title VII.[19]

## III. LAGNIAPPE

### *November Spawned a Monster*

Because of politics and as a means of securing enactment of the Act of 1991, Congress has left the federal judiciary with the "monstrous" task of determining the propriety of the legislation's retroactive application. Perhaps this is a fitting role given the founding father's view of the role of the courts in the separation of powers.

As of this date, the undersigned is aware of at least nineteen other district court decisions which have addressed the very question presented herein, resulting in a variety of approaches. Eight of these decisions hold that the Act should be applied retroactively. *Bristow*, 1992 WL 14262 (N.D.Ill.1992); *Graham v. Bodine Electric Co.*, 782 F.Supp. 74 (N.D.Ill.1992); *King*, 779 F.Supp. 157 (N.D.Ala.1991); *Stender*, 780 F.Supp. 1302 (N.D.Cal.1991); *Mojica*, 779 F.Supp. 94 (N.D.Ill.1991); *LaCour v. Harris County*, 57 FEP Cases (BNA) 622 (S.D.Tex. Dec. 6, 1991); *Davis v. Tri–State Mack Truck Distrib., Inc.*, 1991 Daily Lab. Rep. (BNA) 250 (E.D.Ark. Dec. 16, 1991); *Thakkar v. Provident Nat'l Bank*, No. 90–3907, 1991 WL 274827 (E.D.Pa. Dec. 17, 1991).[20] Eleven hold that the Act should be applied prospectively. *Jane Doe*, 783 F.Supp. at 1384 (S.D.Fla.1992); *Williams v. Healthcare Serv. Group, Inc.*, No. 87–8659–CIV–ZLOCH (S.D.Fla.1992); *Khandelwal*, 780 F.Supp. 1077 (E.D.Va.1992); *Johnson v. Rice*, No. 2:85–CV–1318, 1992 WL 16284, 1992 U.S.Dist. LEXIS 830 (S.D.Ohio Jan. 24, 1992); *High v. Broadway Industries, Inc.*, No. 90–1066–CV–W–3, 1992 WL 33860, 1992 U.S.Dist. LEXIS 446 (W.D.Mo. Jan. 7, 1992); *Mitchell v. Secretary of Commerce*, No. 82–3020, 1992 WL 10509, 1992 U.S.Dist. LEXIS 147 (D.D.C. Jan. 10, 1992); *Sorlucco v. New York City Police Dept.*, 780 F.Supp. 202 (S.D.N.Y.1992); *Hansel*, 778 F.Supp. 1126; *Van Meter*, 778 F.Supp. 83 (D.D.C.1991); *Alexander v. AMP, Inc.*, 57 FEP Cases (BNA) 768 (W.D.Penn. Dec. 5, 1991); *James v. American Int'l Recovery Inc.*,

---

**18.** For example, section 101 of the Act, titled "Prohibition Against All Racial Discrimination In The Making and Enforcement of Contracts" amends 42 U.S.C. § 1981, while section 106 of the Act, titled "Prohibition Against Discriminatory Use of Test Scores" amends section 703 of the Civil Rights Act of 1964.

**19.** The present case does not involve a § 1981 claim. Consequently, the undersigned expresses no comment on the *Jane Doe* court's finding of manifest injustice with respect to the retroactive application of the Act to a § 1981 cause of

action. It should be noted, however, that a district court in the Northern District of Illinois has applied *Bradley* in the context of a section 1981 action, only to reach an opposite conclusion. *Graham v. Bodine Electric Co.*, 782 F.Supp. 74 (N.D.Ill.1992).

**20.** In addition, a Magistrate Judge in the Northern District of Indiana has applied the Act retroactively. *Guess v. City of Portage*, No. H–90–276, 1992 WL 8722 (N.D.Ind. Jan. 14, 1992).

No. 89–CV–321–RHH, 1991 WL 281734, 1991 U.S.Dist. LEXIS 18408 (N.D.Ga. Dec. 3, 1991).

For the most part, these cases hold that the language and legislative history of the Act do not evidence a clear congressional intent either for or against its retroactive application. Virtually all were decided by the application of either the *Bradley* or *Bowen* rule of construction.[21] Except for two decisions,[22] the question of which line of divergent authority to apply was determined by whether the circuit, in which the district court sat, had adopted either *Bradley* or *Bowen*.

### Peace in Our Time?

Hence, the battlelines are drawn. Those circuits applying *Bowen*, and holding that congressional enactments will not be construed to have a retroactive effect unless their language requires otherwise, include the Fourth Circuit, *LeLand v. Federal Ins. Adm'r*, 934 F.2d 524, 527 (4th Cir.1991), the Eighth Circuit, *Simmons v. Lockhart*, 931 F.2d 1226, 1230 (8th Cir.1991), the Tenth Circuit, *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.*, 911 F.2d 1377 (10th Cir.1990), *cert denied*, —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991), the District of Columbia, *Alpo Pet Foods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 963 n. 6 (D.C.Cir.1990),[23] and the Federal Circuit, *Sargisson v. United States*, 913 F.2d 918, 922–23 (Fed.Cir.1990).

Those circuits applying *Bradley* and favoring retroactive application include the First Circuit, *Aledo–Garcia v. Puerto Rico Nat. Guard Fund, Inc.*, 887 F.2d 354, 355 (1st Cir.1989), the Seventh Circuit, *Federal Deposit Ins. Corp. v. Wright*, 942 F.2d 1089, 1095 n. 6 (7th Cir.1991); *Reliance Ins. Co. v. Zeigler*, 938 F.2d 781, 785 (7th Cir.1991),[24] the Ninth Circuit, *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1424–25 (9th Cir.1989), *cert denied*, —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990), and the Eleventh Circuit, *United States v. Peppertree Apartments*, 942 F.2d 1555, 1561 n. 3 (11th Cir.1991).[25]

In short it appears that only a clear directive from the Supreme Court will bring peace to the "war" raging in our federal courts. Until that day, this midshipman has been conscripted by the Eleventh Circuit to serve in the *Bradley* armed forces.

In view of all the foregoing, it is hereby ORDERED and ADJUDGED that the Plaintiff's Motion for Leave to Amend and Demand for Jury Trial (DE 8) is GRANTED. The Plaintiff shall have eleven (11) days from the date of this order in which to file her Amended Complaint.

DONE and ORDERED.

**21.** While the *Van Meter* and *Stender* courts discerned a congressional intent, they alternatively relied upon the Supreme Court precedent applicable in their circuit. In *Johnson v. Rice,* No. 2:85–CV–1318, 1992 U.S.Dist. LEXIS 830 (S.D.Ohio Jan. 24, 1992), the court's determination was based on whether the statute affected substantive rights or was remedial in nature. *See also* n. 25, *infra.*

**22.** Surprisingly, the two decisions which failed to apply binding law are from the Eleventh Circuit. *See Williams, supra* n. 11 and *James* (refusing to apply Act and referencing a Magistrate's Report and Recommendation decided prior to the statute's enactment).

**23.** This decision was authored by current Supreme Court Justice Clarence Thomas. Thomas applied *Bowen* to the facts of that case, citing favorably to Justice Scalia's concurrence in *Kaiser Aluminum. Alpo,* 913 F.2d at 964 n. 6.

**24.** The Seventh Circuit's most recent statement is ambiguous. *See Orrego v. 833 West Buena Joint Venture,* 943 F.2d 730 (7th Cir.1991) (applying *Bowen,* but also citing to *Bradley* for manifest injustice test). A district court in the Northern District of Illinois recently questioned *Orrego's* inconsistency and declined to follow it. *Bristow,* 1992 WL 14262 at * 4.

**25.** Although *Bradley* has been cited as controlling authority in the Sixth Circuit, *Harper–Grace Hosp. v. Schweiker,* 691 F.2d 808, 811 (6th Cir. 1982), more recent decisions hold that *Bradley* is a narrow exception to the general principle that statutes affecting substantive rights are presumed to have only prospective effect, while those which are remedial or procedural apply retroactively. *See United States v. Murphy,* 937 F.2d 1032, 1037 (6th Cir.1991).