Josephine HAYNES, et al., Plaintiffs,

v.

SHONEY'S, INC., et al., Defendants.

No. 89–30093–RV.

United States District Court,
N.D. Florida,
Pensacola Division.

March 12, 1992.

Thomas A. Warren and Sam J. Smith, Tallahassee, Fla.

Cornelia T.L. Pillard, NAACP Legal Defense and Educational Fund, Inc., New York City, Jocelyn D. Larkin, Elaine B. Feingold, Antonio Lawson, Barry Goldstein, and Sheila Y. Thomas, Saperstein, Seligman & Mayeda, Oakland, Cal., for plaintiffs.

Jack H. Halgren, Los Angeles, Cal., Barry V. Frederick, Charles A. Powell, III, Birmingham, Ala., Stephen E. Tallent, Washington, D.C., and Peter W. Zinober, Tampa, Fla., for defendant Shoney's, Inc.

Donald H. Partington, Pensacola, Fla., for defendant Ray Danner.

ORDER

VINSON, District Judge.

Pending is the plaintiffs' motion regarding the applicability of the Civil Rights Act of 1991 to this action. (doc. 860). The issue presented is whether the Civil Rights Act of 1991 [Pub.L. No. 102–166, 105 Stat. 1071 (to be codified at various sections of Titles 29 and 42, *United States Code*)] (hereinafter "the 1991 Act"), which became law on November 21, 1991, applies to this civil rights action, which was originally filed on April 4, 1989. Because I find that the 1991 Act should not be applied retroactively, the plaintiff's motion is DENIED.

On November 21, 1991, President Bush signed the Civil Rights Act of 1991. The 1991 Act effectively reversed or modified a number of decisions by the Supreme Court of the United States, including *Patterson v. McClean Credit Union*, 491 U.S. 164, 109

S.Ct. 2363, 105 L.Ed.2d 132 (1989).[1] *See, e.g., Partee v. Metropolitan School District of Washington Township,* 954 F.2d 454 (7th Cir.1992) (acknowledging statutory abrogation). The relevant portions of the 1991 Act, will, if retroactively applied, have a substantial effect on the scope of this case.

For example, the Act effectively overrules *Patterson, supra,* by amending Title 42, *United States Code,* Section 1981, to extend its protections to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *See* Section 101(2)(b). This would appear to effectively eliminate the defendants' argument that a number of claims arising under Section 1981 are barred because they seek relief for discriminatory harassment, retaliation, and/or discharge, both actual and constructive.[2]

Another significant effect of the 1991 Act is on available remedies. Under Section 102 of the Act, Section 1981 is amended to provide for compensatory and punitive damages for claims of intentional violations: (a) of Title VII, (b) of the Americans with Disabilities Act of 1990 [Pub.L. No. 101–336, 104 Stat. 327 (to be codified at 42 U.S.C. § 12101) ], and (c) of the Rehabilitation Act of 1973 [29 U.S.C. § 791], in addition to other remedies (injunctive relief and backpay)[3] already provided by Title VII.[4]

The damages provisions appear as an amendment to Section 1981 and complaining parties will make their claims under Section 1981 only. *See* Section 102(a)(1), (b), (d)(1). The new damages are not available to parties who can recover under the existing provisions of Section 1981. *See* Section 102(a)(1). Punitive damages are available where it is demonstrated that the defendant acted intentionally or with "malice or with reckless indifference to ... federally protected rights." Section 102(b)(1).[5] Section 102 also provides for a right to a jury trial when the complaining party seeks compensatory or punitive damages under this section, and bars the court from in-

---

**1.** Other decisions which were affected by the 1991 Act are *West Virginia University Hospital, Inc. v. Casey,* —— U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989); *Lorance v. A.T. & T. Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989); *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986).

**2.** Under the *Patterson* decision, as construed by both the Eleventh Circuit and other circuits, plaintiffs have no cause of action under Section 1981 for racial harassment, retaliation, and discharge. *See, e.g., Stallworth v. Wells Fargo Armed Servs. Corp.,* 936 F.2d 522 (11th Cir.1991) (discriminatory discharge); *Busby v. City of Orlando,* 931 F.2d 764 (11th Cir.1991) (discrimination and harassment); *Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527 (11th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 353, 112 L.Ed.2d 317 (1990) (retaliation claims). Thus, the plaintiffs in this case would be limited to the relief provided by Title VII for those types of claims; assuming, of course, that they have satisfied the administrative prerequisites for bringing suit in a United States district court.

**3.** Title 42, *United States Code,* Section 2000e–5(g), constitutes the enforcement provision of

Title VII and provided for the following relief to the victims of unlawful employment practices: enjoining the employer from the unlawful employment practice, ordering affirmative action, including reinstatement with or without backpay, and ordering "any other equitable relief to court deems appropriate."

**4.** Section 102(a)(1) provides:

In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e–2 or 2000e–3), and provided that the complaining party cannot recover under section 1977 of the Revised Statutes (42 U.S.C.1981), the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

**5.** Although complaining parties may seek full compensation for past pecuniary losses, the 1991 Act limits the total amount that may be awarded in punitive damages and in compensatory damages for non-pecuniary and future pecuniary losses, based on employer size as set out in Section 102(b)(3).

forming the jury of the statutory limita-tions on the amount of damages awarded.[6]

■ The starting point for interpreta-tion of a statute is the language of the statute itself. *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 852, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842, 852 (1990). In the absence of a clearly expressed legislative intention to the con-trary, the language must be ordinarily re-garded as conclusive. *Id. See also United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483, 494 (1986); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766, 772 (1980). If the statute is silent, the court can apply general principles of statutory construction to determine if intent is implicit in the overall context of the statute.

Unfortunately, the plain language of the 1991 Act provides no guidance on the re-troactivity determination. The 1991 Act does not explicitly provide for retroactive or prospective application. Three sections do provide for a time of application, but they carry conflicting inferences. First, Section 402(a) provides that the effective date of the 1991 Act is the date of enact-ment.[7] It does not reflect any intent to make the Act retroactive, and must be con-strued as an indication of prospective appli-cation only.

Second, Section 402(b) excepts any retro-active application of the Act to any dispa-rate impact case which "was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983," i.e., the *Wards Cove Packing* case.[8] *See e.g.,* 137 Cong. Rec. S15,483 (daily ed. Oct. 30, 1991) (statement of Sen. Danforth);

137 Cong. Rec. S15,953 (daily ed. Nov. 5, 1991) (statement of Sen. Murkowski); 137 Cong. Rec. S15,478 (daily ed. Oct. 30, 1991) (statement of Sen. Dole). As a number of courts have noted, to construe the statute as prospective only in its application would render this section superfluous. The Su-preme Court has expressed a hesitation to adopt an interpretation of a congressional enactment which renders superfluous an-other portion of the same law. *See Mackey v. Lanier Collections Agency & Serv., Inc.,* 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836, 848 (1988); *Massa-chusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142, 105 S.Ct. 3085, 3090, 87 L.Ed.2d 96, 103 (1985). Thus, it can be said that the only interpretation of Section 402(a) which does not render Section 402(b) meaningless and redundant is that the Act is generally to be applied retroactively. However, the political maneuvering evident in the Murkowski Amendment makes even that conclusion very tenuous, because it seems to have been a "scotch-block" brought about because of the then-existing uncertainty of how the Act would ultimate-ly read.

■ Finally, Section 109 of the Act legislatively overrules *E.E.O.C. v. Arabian American Oil,* — U.S. —, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), by extending Title VII protection to United States citi-zens who are working abroad for American companies. Section 109(c) would also be apparently rendered superfluous if the 1991 Act is construed as prospective only in application, since it provides that "[t]he amendments made by *this* section shall not apply with respect to conduct occurring before the date of enactment of this Act." (emphasis added). If possible, a court

---

**6.** Because of the equitable nature of Title VII claims, courts have held that parties bringing such claims have no right to a jury trial. *See, e.g., Sherman, supra,* 891 F.2d at 1529 n. 4. It is generally recognized that the 1991 Act's jury trial provision will dominate litigation strategy.

**7.** Although it has been observed that the fact that Congress has expressed its intention that a statute take effect upon enactment is some indi-cation that it believed that application of its provisions was urgent, *see, e.g., In re Reynolds,* 726 F.2d 1420, 1423 (9th Cir.1984) (omnibus

Budget Reconciliation Act of 1981), I cannot agree. It is simply an appropriate date. Urgen-cy may be inferred from other circumstances, however.

**8.** Indeed, according to Representative McDer-mott, the President is reported to have threat-ened to veto the legislation unless an exception for the *Wards Cove Packing* case was included. *See* 137 Cong. Rec. H9,506 (daily ed. Nov. 7, 1991). The exception added in section 402(b) was part of the "Murkowski Amendment." *See* 137 Cong. Rec. S15,964 (daily ed. Nov. 5, 1991).

must interpret a statute so as to give effect to every clause. *Kungys v. United States,* 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839, 858 (1988) (referring to the "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant"). Moreover, Congress is presumed to act with knowledge of the basic rules of statutory construction. *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 499, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991).[9] Again, however, this provision seems more likely to have been generated because of the uncertainty of how the Act would ultimately read, and cannot be indicative of a comprehensive legislative intent.

Despite the permissible inferences which might be drawn from these conflicting provisions, it is clear to me that the use of statutory deduction alone provides no meaningful assistance in the construction of this aspect of the Act. Therefore, I must also examine the history and purpose of the Act. I initially note the remarkable lack of clarity of legislative intent revealed by the pertinent history of the 1991 Act.

The 1991 Act was the result of an often bitter two-year effort by some members of Congress to enact some form of additional civil rights legislation. The legislation, as originally introduced in February 1990, targeted five decisions by the Supreme Court in 1989. These decisions (1) narrowed the coverage of civil rights legislation; (2) broadened the circumstances under which affirmative action plans could be challenged after the fact; (3) narrowed the circumstances in which a complaining party could challenge an allegedly discriminatory seniority plan; (4) imposed more exacting standards for succeeding on disparate impact claims; and (5) increased the difficulty of establishing liability of employers whose motivation was partially legitimate and partially discriminatory.

After the 1990 legislation failed, and before the 1991 Act was enacted, two additional Supreme Court cases affected civil rights legislation by (1) determining that a prevailing party's ability to recover expert witness fees in civil rights actions was the same as any other civil litigation, and (2) by limiting coverage of Title VII in foreign employment. *See West Virginia University Hospital, Inc. v. Casey,* —— U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); *E.E.O.C. v. Arabian American Oil,* —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991). The 1991 Act also includes provisions which effectively overrule these two subsequent decisions.

The 1990 bill contained a number of provisions which provided for varying degrees of retroactive application in pending cases. *See* 136 Cong. Rec. H9,554 (daily ed. Oct. 12, 1990). However, President Bush vetoed this bill, stating as one of his reasons "unfair retroactivity rules." *See* 136 Cong. Rec. S16,457 (Oct. 22, 1990) (record of Presidential Veto). The Presidential veto of the 1990 Act was upheld by one vote. The 1991 Act contains none of the retroactivity provisions found in the unsuccessful 1990 legislation, and it could be easily inferred that these provisions were deliberately eliminated in order to facilitate enactment and avoid another Presidential veto. *Compare* 1991 Act *with* S.2104, 101st Cong., 1st Sess. s. 15 (1990). The executive branch clearly plays an essential role in the enactment of legislation, and it has to be considered as part of the legislative history.

Nevertheless, as a number of courts have observed, this seemingly intentional ambiguity did not prevent various legislators from attempting to create a "legislative history" to support individual views on whether the 1991 Act should be applied retroactively. The two principal sponsors of the Act, Senators Danforth and Kennedy, issued a so-called "joint memorandum" in which they agreed on virtually every-

---

9. On the other hand, Section 104 defines "complaining party" to include "the Commission, the Attorney General, or a person who *may bring* an action or proceeding under this title." This provision could be construed as indicating a

legislative intent of prospective-only application because it suggests that the term "complaining party" is limited to those plaintiffs who have not yet brought suit.

thing *except* retroactivity.[10]  *See* 137 Cong. Rec. S15483 (daily ed. Oct. 30, 1991).  The Republican Senators rallied behind Senator Danforth, asserting that the Act did not apply retroactively, while the Democrats followed Senator Kennedy, asserting the contrary.  *See* 137 Cong. Rec. S15485 (Oct. 30, 1991); 137 Cong. Rec. H9530–31, H9548, H9549 (Nov. 7, 1991).[11]  There were no Committee Reports for the 1991 Act as finally enacted, and the Act could not have been enacted without the support of both Republicans and Democrats.

In addition to the Senators and Representatives who expressed their viewpoints on retroactivity, the executive branch also had significant input.  On November 21, 1991, the date of enactment, the President released a statement in which he expressed his opinion that he was signing the legislation into law on the basis that the 1991 Act should be applied prospectively only.  *See* Daily Labor Report (BNA) (Nov. 22, 1991).  Thus, the essential role played by the executive branch in this Act becoming law has to be construed as unequivocally weighing in favor of prospective-only application.

Subsequently, the Equal Employment Opportunity Commission ("EEOC") issued its own statement that the damages provisions of the 1991 Act will not be treated as retroactive, and that the EEOC will not seek damages for events occurring prior to November 21, 1991.  *See* EEOC Notice 915.002 (Dec. 27, 1991).  Although this action by the executive branch agency charged with administration of the Act may be entitled to "considerable weight," it is of very limited value in this case.  *See* footnote 19, *infra.*

Senator Danforth is on record as expressing an opinion which appears correct: (1) that there is no real legislative history, but merely a number of inconsistent statements by various senators and representa-tives; and (2) that a court which seeks to interpret the statute should examine the language of the statute in light of appropriate rules of statutory construction.  *See* 137 Cong. Rec. S15,325 (daily ed. Oct. 29, 1991) and 137 Cong. Rec. S15,483 (daily ed. Oct. 30, 1991).  In light of the foregoing, which reveals the tense debate between the legislation's sponsors, numerous members of Congress, and the President, I must conclude that Congress was unable to agree, so it deliberately left the application ambiguous for political reasons.  Although the President cannot draft legislation, he has made it very clear that he signed it into law with the intention that it is to be prospective in application.

In addition to the Act's history, it often helpful to examine the purpose of the legislation in question.  Often, in cases where Congress is correcting or altering the Supreme Court's interpretations of a statute, rather than creating new rights and obligations, the statute is interpreted retroactively, absent evidence of intent to the contrary.  *See, e.g., Ayers v. Allain,* 893 F.2d 732, 754–55, *vacated on other grounds,* 914 F.2d 676 (5th Cir.1990) (en banc), *cert. granted on other grounds,* — U.S. —, 111 S.Ct. 1579, 113 L.Ed.2d 644 (1991).  The 1991 Act was clearly intended to change the effect of a number of Supreme Court holdings with which a majority of those in Congress disagreed.  Of course, the fact that Congress has deliberately changed the Supreme Court's interpretation of an existing statute is not, by itself, conclusive evidence of congressional intent that a statute is to be applied retrospectively.  The previously-existing provisions of Section 1981, enacted as a part of the Civil Rights Act of 1866, have been extensively and substantially amended by the 1991 Act.  In my judgment, the 1991 Act has the effect of creating new rights and obli-

---

**10.** While a statement of a legislative sponsor deserves to be accorded substantial weight in interpreting the statute, *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 527, 102 S.Ct. 1912, 1921, 72 L.Ed.2d 299, 311 (1982), in this case the statements of one principal legislative sponsor offset those of the other, and vice versa.

**11.** Both the plaintiffs and the defendants rely on the opposing opinions of various senators on the issue of retroactivity.  However, it is clear from these same opinions that no general consensus on the issue was reached; rather, the record reflects the personal opinions of the individual senators.

gations, so this presumption of retroactivity is inapplicable.

Having determined that neither the statutory language nor the congressional history of the Act provide any meaningful guidance on the issue of retroactivity, I turn to controlling case law on retroactivity determinations. This is also in a state of confusion. In its 1990 decision in *Kaiser Aluminum & Chemical Corp. v. Bonjorno, supra,* the Supreme Court acknowledged the confusion generated by two conflicting lines of decision regarding what lower courts should do when the language and the legislative history are inconclusive on the question of whether a statute is to be applied retroactively. 494 U.S. at 837–38, 110 S.Ct. at 1577, 108 L.Ed.2d at 853.[12]

In *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Supreme Court held that retroactivity is disfavored and that congressional enactments and administrative rules will not be construed to have a retroactive effect unless there is a clear congressional intent to the contrary. *Id.* at 208, 109 S.Ct. at 471, 102 L.Ed.2d at 500.[13]

However, in *Bradley v. School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that statutes going into effect during the pendency of a case are presumed to be applied to the case, where there is: (1) no clear congressional intent to the contrary, or (2) application of the law would result in manifest injustice to one of the parties. *Id.* at 711, 94 S.Ct. at 2016, 40 L.Ed.2d at 488.[14] *See also Thorpe v. Durham Hous. Auth.,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). Therefore, either side of this issue

can find Supreme Court support for its preferred rule of construction.

■ In *United States v. Peppertree Apartments,* 942 F.2d 1555 (11th Cir.1991), *petition for cert. filed* (U.S. Dec. 26, 1991) (No. 91–1075), the Eleventh Circuit, acknowledging these conflicting precedents, clearly stated the rule in this circuit: unless otherwise directed by the Supreme Court or the Eleventh Circuit *en banc,* the district courts are bound by precedent to apply the *Bradley* analysis. *Id.* at 1561 n. 3.[15] The *Bradley* analysis creates a presumption in favor of retroactive application, in the absence of clear congressional intent to the contrary and in the absence of "manifest injustice" to one of the parties. Consistent with *Bradley,* in order to avoid application of the statute, there must be a "fair indication" that the statute, properly construed, has only prospective effect. *See, e.g., F.D.I.C. v. Wright,* 942 F.2d 1089, 1095 (7th Cir.1991). I have already determined that there is no meaningful evidence of congressional intent on retroactive application. Therefore, I turn to the second part of the analysis, i.e., whether retroactive application would result in "manifest injustice" to one of the parties.

■ In determining whether manifest injustice results from retroactive application to pending actions, courts are to consider three factors: (1) the nature and the identity of the parties; (2) the nature of their rights; and (3) the nature of the impact of the change of law on those rights. *Bradley, supra,* 416 U.S. at 717, 94 S.Ct. at 2019, 40 L.Ed.2d at 491–92.

In examining the first factor, the nature and identity of the parties, the question of

---

**12.** However, the Supreme Court found it unnecessary in *Kaiser Aluminum* to reconcile the two conflicting lines of precedent. *Id.* at 837–38, 105 S.Ct. at 1577, 108 L.Ed.2d at 854.

**13.** *Bowen* involved a challenge to an attempt by the Secretary of Health and Human Services to issue administrative regulations which would apply retroactively.

**14.** In *Bradley,* the issue was the validity of retroactive application of the Section 718 of the Emergency School Aid Act, Title 20, *United States Code,* Section 1617, which authorized an

award of attorney's fees to the prevailing party in a school desegregation case.

**15.** The Eleventh Circuit had applied the *Bradley* approach on a number of previous occasions. *See, e.g., Federal Deposit Insurance Corp. v. 232, Inc.,* 920 F.2d 815 (11th Cir.1991); *Delmay v. Paine Webber,* 872 F.2d 356 (11th Cir.1989); *Tallahassee Memorial Regional Medical Center v. Bowen,* 815 F.2d 1435 (11th Cir.1987), *cert. denied,* 485 U.S. 1020, 108 S.Ct. 1573, 99 L.Ed.2d 888 (1988); *United States v. Fernandez-Toledo,* 749 F.2d 703, 705 (11th Cir.1985).

whether the parties are public or private is often short-circuited in the civil rights arena by courts that merely look at the nature of the *action.* That is, because the Civil Rights Act of 1991 purportedly involves matters of great public concern—remedying race and sex discrimination and promoting equality—a number of courts have indicated that it is immaterial whether the parties are private or public. *See, e.g., Goldsmith v. City of Atmore,* 782 F.Supp. 106 (S.D.Ala.1992) ("The first factor favors retroactivity no matter who the parties may be"); *Guess v. City of Portage,* Civ. No. 90–276, 1992 WL 8722 (N.D.Ind. Jan. 14, 1992) (Text available on Westlaw).

> [T]he 1991 Act, like the Civil Rights Act of 1964, is intended to promote equality in our nation and provide a remedy for discrimination. This is a public concern of great importance in our society. While the present case is not one where the plaintiff is acting in the role of a "private attorney general," the public component of the dispute between the parties cannot be ignored. The 1991 Act itself generated great public interest and substantial political dispute. While the private nature of this particular litigation is recognized, it is also recognized that this case and the legislation under consideration involve matters of substantial public concern.

*Mojica v. Gannett Co.,* 779 F.Supp. 94 (N.D.Ill.1991) (citation omitted).

*See also United States v. Marengo County Comm'n,* 731 F.2d 1546, 1554 (11th Cir.), *cert. denied,* 469 U.S. 976, 105 S.Ct. 375, 83 L.Ed.2d 311 (1984) ("The first consideration, the nature of the parties, arises from the distinction ... between private disputes and 'great national concerns' "). I agree that "great national concerns" may transcend private disputes, but the parties must remain the focus of this element. Whether this Act advances those great national concerns, of course, is a political question whose intensity is reflected in the history already discussed. Nevertheless, I conclude that the first factor in this case favors retroactivity. The racial discrimina-

tion claims made by the plaintiffs in this case allege a widespread pattern, affecting a large number of people across the United States. The nature of the parties indicates that, if their claims are proven, the plaintiffs should receive the benefit of currently allowed remedies.

The second and third "manifest injustice" factors are the nature of the parties' rights and the impact of the change of law on those rights. Because these two factors are so closely interrelated, they are frequently analyzed together. The question posed by the second factor is whether application of the new law "would infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley, supra,* 416 U.S. at 720, 94 S.Ct. at 2020–21, 40 L.Ed.2d at 493.

As I have noted above, the impact of the change of law is frequently merged analytically into the nature of the parties' rights. The "impact" factor normally concerns "the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Bradley, supra,* 416 U.S. at 720, 94 S.Ct. at 2021, 40 L.Ed.2d at 493.

The plaintiffs contend that the 1991 Act does not alter any expectations or change the substantive law so as to make previously lawful conduct unlawful. They maintain that the only changes are remedial in nature, and that no matured or vested rights are affected or additional duties imposed on the defendants. I cannot agree. Prior to the enactment of the 1991 Act, Section 1981 provided a cause of action only for racial discrimination in the formation of contracts. However, the new Act greatly expands potential liability under Section 1981 by creating new causes of action for post-contract formation conduct such as harassment, wrongful termination, and certain failures to promote. This new right— a new cause of action—alters the standard for measuring the employers' conduct in the employment relationship, thereby creating a new source of liability for employers and effectively altering the rights and liabilities of the contractual relationship.[16]

---

**16.** Although not pertinent to this case, the 1991     Act also affects substantive rights by creating

The employers are now exposed to additional potential liability for conduct which was heretofore not prohibited by Section 1981.[17]

Proponents of retroactive application have argued that the 1991 Act merely restores substantive rights that existed prior to *Patterson.* However, I am not willing to assume that the Supreme Court erroneously construed Section 1981 in *Patterson.* Rather, I view the 1991 Act as defining current congressional intent with regard to Section 1981. *Patterson* correctly determined the application of Section 1981 as it existed from the time of its enactment in 1866 until amended by the 1991 Act, a period of about 125 years.

Other factors that militate against retroactive application are the 1991 Act's provisions for compensatory and punitive damages for intentional violations of Title VII, and the elimination of certain substantive defenses formerly available under the law as set out in the Supreme Court's decisions in *Price Waterhouse, supra,* and other cases. Because the 1991 Act creates a new cause of action under Section 1981 for post-contract formation conduct in employment contracts, thus imposing new potential liability and new responsibilities, thereby up-

setting legitimate contract expectations, I must conclude that retroactive application of such provisions would amount to manifest injustice to some or all of the defendants under the *Bradley* analysis.[18]

I make some additional observations with regard to this matter: a number of district courts have been confronted with the issue of retroactive application of the 1991 Act, and those courts have taken a variety of approaches in interpreting the Act. Many of those courts which have ruled against retroactive application have applied the *Bowen* analysis. *See, e.g., Patterson v. McLean Credit Union,* 784 F.Supp. 268 (M.D.N.C.1992); *West v. Pelican Financial Services Corp.,* 782 F.Supp. 1132 (M.D.La.1992); *Burchfield v. Derwinski,* 782 F.Supp. 532 (D.Colo.1992); *Simons v. Southwest Petro–Chem, Inc.,* Civ. A. No. 90–2243–V, 1992 WL 25218 (Jan. 22, 1992); *Tyree v. Riley,* 783 F.Supp. 877 (D.N.J. 1992); *High v. Broadway Industries, Inc.,* Case No. 90–1066–CV–W–3, 1992 WL 33860 (Jan. 7, 1992); *Khandelwal v. Compuadd Corp.,* 780 F.Supp. 1077 (E.D.Va.1992); *Van Meter v. Barr,* 778 F.Supp. 83 (D.D.C. 1991); *Hansel v. Public Serv. Co.,* 778 F.Supp. 1126 (D.Colo.1991).[19] A number of

---

other new theories of liability. *See, e.g.,* Section 106(*l*) (creating liability for certain discriminatory use of test scores); Section 112(2) (creating liability for certain discriminatory seniority system practices); Section 117 (creates liability for civil rights violations committed by House of Representatives); Title III (creates liability for civil rights violations by the Senate).

**17.** Although such conduct has been actionable under the more expansive scope of Title VII, such claims were subject to more stringent procedural prerequisites, including exhaustion of administrative remedies. Congress had carefully crafted an elaborate administrative procedure, which was implemented by the EEOC, designed to assist in the investigation of racial discrimination claims in the workplace to seek resolution of such claims through conciliation, rather than litigation. It is clear that providing a means to bypass these elaborate procedures creates a new right in the employees, and effectively upsets the legitimate expectations of the employers and imposes new obligations with regard to post-formation conduct. Indeed, I express great concern that the 1991 Act's expansion of remedies significantly undermines the efficacy of Title VII's carefully drafted conciliation procedures and may encourage plaintiffs

who fall within the scope of the 1991 Act to bypass these administrative provisions altogether.

**18.** Because *Bowen* raises a presumption *against* retroactivity, it is clear that my conclusion would be the same under *Bowen,* and would be even more strongly supported if *Bowen* was the governing standard in the Eleventh Circuit.

**19.** As discussed in the text of this order, the Equal Employment Opportunity Commission has also taken the position that the 1991 Act should apply prospectively only. *See* E.E.O.C. Notice, No. 915.002, Dec. 27, 1991. Although it is generally recognized that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer," *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694, 704 (1984) (footnote omitted), "the amount of deference warranted in a particular case 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade if lacking power to control.'" *Miree Constr. Corp. v. Dole,* 930 F.2d 1536, 1541 (11th Cir.1991) (quoting *Skidmore v. Swift &*

district courts which have analyzed the issue under *Bradley* principles have determined that retroactive application is appropriate. *See, e.g., Sanders v. Culinary Workers Union Local No. 226,* 783 F.Supp. 531 (D.Nev.1992); *Joyner v. Monier Roof Tile, Inc.,* 784 F.Supp. 872 (S.D.Fla.1992); *Bristow v. Drake Street, Inc.,* Case No. 87 C 4412, 1992 WL 14262 (N.D.Ill. Jan. 21, 1992); *Long v. Carr,* 784 F.Supp. 887 (N.D.Ga.1992); *Graham v. Bodine Elec. Co.,* 782 F.Supp. 74 (N.D.Ill.1992); *Mojica v. Gannett Co.,* 779 F.Supp. 94 (N.D.Ill. 1991); *King v. Shelby Medical Center,* 779 F.Supp. 157 (N.D.Ala.1991); *Watkins v. Bessemer State Technical College,* 782 F.Supp. 581 (N.D.Ala.1992); *Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302 (N.D.Cal.1992); *Goldsmith v. City of Atmore,* 782 F.Supp. 106 (S.D.Ala.1992); *Guess v. City of Portage,* Civ. No. 90–276, 1992 WL 8722 (N.D.Ind. Jan. 14, 1992) (Text available on Westlaw).

Yet, many courts have agreed with me and ruled in favor of prospective-only application, relying on the *Bradley* analysis.[20] *See, e.g., Doe v. Board of County Commissioners,* 783 F.Supp. 1379 (S.D.Fla.1992); *Maddox v. Norwood Clinic, Inc.,* 783 F.Supp. 582 (N.D.Ala.1992); *Sorlucco v. New York City Police Department,* 780 F.Supp. 202 (S.D.N.Y.1992).

The 1991 Act creates a new cause or causes of action under Section 1981 which,

---

*Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)). Because the EEOC's position is grounded in its view that *Bowen* is the controlling authority, it must be discounted within the Eleventh Circuit which requires *Bradley,* and not *Bowen,* to be applied for purposes of construing the Act.

20. In *Gersman v. Group Health Association, Inc.,* —— U.S. ——, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992), the Supreme Court vacated and remanded for further consideration in light of the Civil Rights Act of 1991 the decision of the Court of Appeals that *Patterson* barred the plaintiffs' claim of contract termination under Section 1981. Nevertheless, the Supreme Court did not address the retroactivity issue, and mere remanding for further consideration is not an indication of the Supreme Court's present position on the issue.

21. The plaintiffs have represented that they do not intend to seek compensatory or punitive

---

as I have already explained, affects the parties' antecedent rights. The 1991 Act also amends Title VII with regard to damages, jury trial, and attorneys' fees, which changes are arguably procedural or remedial.[21] When both substantive changes affecting antecedent rights and changes affecting only procedure or remedy are involved in the same legislation, the legislation should not be given either full or partial retroactive application.[22] *See United States v. Fernandez–Toledo,* 749 F.2d 703 (11th Cir.1985). Therefore, the 1991 Act will be applied prospectively in this case.

DONE AND ORDERED.

---

damages under Title VII pursuant to the 1991 Act, and therefore, the right to a jury trial under the 1991 Act would not be triggered. However, plaintiffs have also represented that should the trial of this be substantially delayed, they may seek the additional damages available pursuant to the 1991 Act. Accordingly, I am ruling on the retroactive application of the damages and jury trial amendments as well.

22. Although I find it unnecessary to address the issue of whether retroactive application of the amendments permitting punitive damages would constituted a prohibited ex post facto law, I recognize that a change in a statute which permits punitive damages for the first time may raise due process and ex post facto concerns. *See, e.g., Woods v. Beavers,* 922 F.2d 842 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2238, 114 L.Ed.2d 480 (1991) (text available on Westlaw); *Curtis Publishing Co. v. Butts,* 351 F.2d 702, 727–28 (5th Cir.1965), *aff'd,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).